COFFIN, Chief Judge.
 

 Whatever else they may accomplish, the reorganization proceedings of the bankrupt Continental Investment Corporation assuredly will have supplied material for a continuing series of installments in the pages of the Federal Reporter, 2d Series. Unfortunately, however, this saga of appellate review will have as its dominant motif the undesirability of precisely such piecemeal and fragmented interlocutory litigation.
 

 For we have now been called upon to review decisions of the district court four times — each time by the same party — while the reorganization proceedings have continued unabated before that court. We have seen little merit to the three prior appeals, and have consistently seen no clear basis even for appellate jurisdiction over them.
 
 See In re Continental Investment Corp.,
 
 586 F.2d 241 (1st Cir. 1978)
 
 (CIC
 
 I);
 
 In re Continental Investment Corp.,
 
 No. 80-1362 (1st Cir., Oct. 31, 1980)
 
 (CIC II);
 
 and
 
 In re Continental Investment Corp.,
 
 No. 80-1248 (1st Cir., Dec. 5, 1980)
 
 (CIC III).
 
 We see less of each in the instant appeal, and again affirm the judgment of the district court.
 

 The protagonists in the current chapter of our tale remain the Wallaces, the majority shareholders in the bankrupt, who once again seek to set aside a district court order approving a proposed compromise of creditors’ claims. Indeed, the posture of the present appeal and its procedural facts in schematic form are precisely the same as in
 
 CIC III:
 
 creditors press claims against the bankrupt; the trustee challenges those claims; the creditors and the trustee negotiate a compromise; the majority stockholders object; the court approves the compromise; and the majority stockholders appeal. The substance of the claims and objections at issue here is of course very different, and while appellants’ attack focuses exclusively on alleged procedural inadequacies in the district court, assessing those charges requires a brief explication of the underlying facts.
 

 After CIC defaulted prior to bankruptcy on loans received from a consortium of 16 banks, it negotiated with them an Omnibus Refinancing Agreement (ORA) reducing and reorganizing its debt. As part of the ORA, the stock of a CIC subsidiary, Investors’ Mortgage Group (IMG), was to be sold at auction; the banks were to offer an immediate debt reduction of $34 million and a subsequent additional reduction for any appreciation in the value of IMG stock, less carrying charges at the time the banks resold it or at the end of five years if they had not resold by then. No other bidders appeared at the sale — after extensive publicity — and the stock accordingly was sold to the banks. Seven months later, the banks resold the stock for approximately $36.7 million.
 

 These facts in turn formed the basis for the trustee’s and the appellants’ objections to the banks’ claims in the reorganization proceedings. Those objections, at least in appellants’ view, centered on a claim that the banks had made a “gentleman’s agreement” with the appellants not to resell the
 
 *3
 
 stock for some longer period than seven months. The procedural history of the objections in the district court is as follows. On February 25, 1980 the trustee filed a proposed plan of reorganization; the banks filed objections and a proposed alternative plan, as did appellants and the other major groups of creditors and shareholders. On June 3 the trustee’s counsel set forth in open court the essence of a compromise with the banks settling all his objections to their claims and all their objections to his proposed plan. Appellants objected to this compromise on June 4 on three grounds, and sought discovery from each of the 16 banks regarding those grounds; both the banks and the trustee opposed appellants’ petition. On June 17 the trustee filed an application for approval of the compromise, and the court ordered all objections to be submitted by June 24. The trustee’s counsel filed an affidavit in support of the compromise on June 23, describing the trustee’s pre-compromise investigation of the bank claims. The agent bank for the 16 banks produced its CIC files for inspection by the trustee and the appellants between June 20 and June 24. On June 24 the trustee filed a modified reorganization plan, affidavits describing the discovery he had taken and its results, and a legal memorandum in support of the application. Appellants on June 24 and 25 moved for a continuation of the hearing and for additional discovery. On June 25 one of the banks moved for an order suspending further discovery by appellants, and the district court after a hearing issued such an order the same day. A hearing on the compromise itself was held on June 25 and 26, and on June 27 the district court entered its order approving the trustee’s application.
 

 Appellants press three alleged defects as fatal to the adequacy of the district court’s procedures: first, that it acted without receiving an adequate trustee’s report of facts pertaining to any causes of action available to the estate; second, that it denied appellants their constitutional and statutory rights to notice and a hearing; and third, that it failed to secure an SEC advisory report prior to approving the compromise. We find each argument to be without merit.
 

 Before addressing those arguments, however, we pause to note again our continuing doubt as to whether appellate jurisdiction exists to review such an interlocutory order.
 
 See CIC III, supra,
 
 slip op. at 2. Appellants assert in a single sentence that because the order appealed from was entered in a proceeding in bankruptcy we have jurisdiction under 11 U.S.C. §§ 47(a) and 521 (repealed 1978 but still applicable to these proceedings;
 
 see CIC II, supra,
 
 slip op. at 3, n.l). We had occasion to examine this jurisdictional provision at some length in
 
 CIC II,
 
 noting that it turned on a distinction between a “proceeding” and a “controversy” —“a distinction which has been characterized as ‘not always simple’, ‘hairline thin’, and ‘obscure and indefensibly confusing’ ”,
 
 id.
 
 at 4 (footnotes omitted). Appellants make no attempt to justify their assertion that this is a proceeding, and, as we suggested in
 
 CIC III, supra,
 
 slip op. at 3, we do not consider it self-evidently to be one.
 
 See In re Lewis Lumber Co., Debtor,
 
 635 F.2d 542 (6th Cir. 1980) (debtor’s challenge to creditor’s claim held a controversy);
 
 cf. CIC II, supra,
 
 slip op. at 4, n.5 (setting forth the traditional view of this distinction). We consider this failure to address a significant jurisdictional question at best careless and perhaps disingenuous, particularly in the third consecutive appeal in which jurisdiction has been problematic. Nonetheless, because the question of our jurisdiction is a close one, and because the appeal is so clearly lacking in merit, we assume jurisdiction without definitely ruling on it.
 

 In turning to the merits, we note first that an application for approval of a compromise is addressed to the district court’s discretion, and that our review is accordingly limited to whether its order constitutes an abuse of discretion.
 
 See American Employers’ Ins. Co. v. King Resources Co.,
 
 556 F.2d 471, 478 (10th Cir. 1977);
 
 In re Equity Funding Corp. of America,
 
 519 F.2d 1274, 1276 (9th Cir. 1975);
 
 cf. Greenspun v. Bogan,
 
 492 F.2d 375, 379 (1st Cir. 1974) (approval of compromise in
 
 *4
 
 stockholder’s derivative suit). With this standard in mind, we address each of appellants’ challenges in turn.
 

 Our analysis of appellants’ claim that the district court lacked an adequate trustee’s report begins with the language of the relevant statute, Section 167(3) of the Bankruptcy Act, 11 U.S.C. § 567(3) (repealed 1978): the trustee “shall report to the judge any facts ascertained by him pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate.” Appellants’ claim that this requirement was unsatisfied in these proceedings is perhaps their strongest argument, but it fails for at least two reasons. First, contrary to their assertion, the terms of the statute require neither that the trustee undertake an investigation nor that he file a formal report. Rather, the statute is designed to ensure that the district court have before it an adequate record in approving a compromise; the principal case relied upon by appellants,
 
 Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
 
 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), stands for just this proposition.
 
 See id.
 
 at 424, 88 S.Ct. at 1163 (under § 167(3), district court should apprise itself “of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated”);
 
 cf. Greenspun v. Bogan, supra,
 
 492 F.2d at 379 (district court should have “sufficient evidence on which an independent appraisal might be based”). Second, and more significantly, the district court had the benefit of both an investigation
 
 and
 
 a report in approving this compromise. Counsel for the trustee submitted an affidavit describing the pre-compromise investigation of the bank claims, and asserted that “insofar as the bank claims are concerned, [the affidavit]
 
 is
 
 the 167(3) report.” (emphasis added). The objections to the bank claims centered on a single issue, and the' affidavit was based on an extensive review of documents relevant to that issue and analyzed them explicitly. Thus, we think the substance of the affidavit comprised a sufficient investigation, and its submission a sufficient report, of the relevant claims available to the estate.
 

 Appellants’ second argument alleges that the district court denied them their statutory right to notice and their constitutional right to be heard with respect to the approval of the compromise. This argument borders on the frivolous. The statutory claim is settled by, among other things, Bankruptcy Rule 10-209(b), which authorizes the district court to dispense entirely with notice to creditors and stockholders for any cause; appellants were given 8 days formal notice and more than 29 days informal notice of the compromise hearing. The constitutional claim is refuted by several facts which need be stated only briefly. The relevant issues had been before the parties for months prior to the trustee’s compromise. Appellants were permitted several days of discovery, and participated in a hearing on the matter before the district court. Appellants themselves, and their agents, had been principal parties to the agreement whose negotiation formed the principal basis for their objection. Appellants had not even alleged any specific material fact that they hoped discovery to reveal. Their objections raised largely questions of law rather than fact. What process, and specifically what notice, is due depends of course upon the circumstances,
 
 see Fuentes v. Shevin,
 
 407 U.S. 67, 96, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972);
 
 Mullane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); in the circumstances of this case, we think appellants have no credible constitutional claim.
 

 Finally, appellants argue that the district court abused its discretion by failing to secure an SEC advisory report prior to approving the compromise, relying for their sole support on Section 172 of the Bankruptcy Act, 11 U.S.C. § 572 (repealed 1978). This reliance is plainly misdirected: section 172 provided for submission to the SEC of “the plan or plans [of reorganization] which the judge regards as worthy of consideration”, and no plan had been selected at the
 
 *5
 
 time the district court entered the order appealed from. Appellants seek to evade this clear obstacle by arguing both that this compromise, because of its detail and its size, effectively determines the ultimate shape of the entire reorganization, and that the failure to seek SEC review thus violated the “spirit” of the § 172 requirement. We think both contentions patently untenable. The compromise dealt with a single class of claims, and did not even address either the claims of the single largest class of creditors or any other details necessary to approximate the functional equivalent of a plan. In addition, the statutory “spirit” pertinent here is that of Section 27 of the Act, 11 U.S.C. § 50 (repealed 1978), which clearly commits approval of proposed compromises to the sole discretion of the district court. Many such compromises are obviously of very great significance to an ultimate plan of reorganization, and they are subject to advisory review by the SEC as part of its review of such a plan. No case has held SEC consultation required in circumstances such as these, and we believe that unanimity to reflect both good law and good policy.
 

 We thus find all of appellants’ arguments to be devoid of merit. We are led by this conclusion to consider the repeated assertions by each of the several appellees before us both that the appellants’ arguments are “captious”, “patently frivolous”, “fatuous at best and deliberately misleading at worst”, and “so brazenly misleading as to evoke awe”. Appellees further assert that this litigation strategy serves a deliberate overall purpose — to delay a final plan of reorganization while the assets of the bankrupt continue to appreciate, seek an upward revaluation, and thus gain a larger share of the equity of the reorganized company. We give some credit to these assertions. In each of their last three appeals the sole end appellants stood to achieve has been delay and further litigation; these appeals have regularly been accompanied by motions for stays in both the district court and this court. We have consistently noted our doubts both as to appellate jurisdiction and as to the worth of appellants’ claims. We find this appeal to present the least meritorious issues, and find appellees’ views of the litigation persuasive. Accordingly, double costs are awarded to the appellees pursuant to Fed.R.App.P. 38.
 

 Affirmed.