CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Appellant,

v.

WIDETT, SLATER & GOLDMAN, P.C.,
et al., Appellees.

Civ. A. No. 84–0273–F.

United States District Court,
D. Massachusetts.

Jan. 21, 1985.

Robert M. Cargill, Andrew C. Griesinger, Choate, Hall & Stewart, Boston, Mass., for appellant.

Mark Berman, Widett, Slater & Goldman, Boston, Mass., for appellees.

## MEMORANDUM

FREEDMAN, District Judge.

This appeal marks yet another chapter in the continuing drama of the GHR bankruptcy proceedings. Appellants ("the Banks") are the agent for GHR's secured bank creditors; appellee is Widett, Slater & Goldman, P.C. ("WS & G"), formerly general counsel and now special counsel to the debtor. The Banks appeal from a final order of the bankruptcy court approving a compromise between the debtor and WS & G regarding an attorney's fee dispute. Because it is impossible to tell from the record what factors informed the bankruptcy court's order, the Court must reverse the order approving the compromise and remand the matter for further proceedings.

## FACTS

In early January 1983, WS & G was general counsel to the debtor, who apparently owed WS & G in excess of $400,000 for past legal work. In the second week of January 1983, Stephen F. Gordon ("Gordon"), at the time the attorney in charge of all GHR matters at WS & G, and John R. Stanley ("Stanley"), the debtor's owner, discussed the possibility of GHR's filing for bankruptcy. According to the affidavits of these two men, Gordon represented to Stanley that WS & G could not represent GHR in a subsequent bankruptcy case unless WS & G received a substantial amount

of money from GHR prior to the filing of the petition. Gordon swears that he never mentioned GHR's outstanding bills for past legal services during this conversation and Stanley swears that it was his understanding that WS & G was requesting a retainer for services to be rendered in connection with the upcoming bankruptcy case. Pursuant to this conversation, GHR sent WS & G $200,000 on January 14, 1983. On January 26, 1983, GHR filed petitions for relief under Chapter 11 of the Bankruptcy Code.

In March 1983, Gordon left WS & G and formed his own firm. Accordingly, the new firm became general counsel to the debtor and WS & G remained on as special counsel.

Although WS & G has never explicitly stated, a fair inference from the record is that WS & G reserved only $64,450.30 of this $200,000 as a retainer and applied the remainder to GHR's outstanding debt. The Court draws this inference from WS & G's first application for attorney's fees filed with the bankruptcy court, which requested fees for services as both general and special counsel rendered through May 31, 1983, minus a $64,450.00 retainer, and from the fact that Gordon's affidavit only implies that the full $200,000 was to be a retainer. There thus exists the possibility that WS & G was the beneficiary of a voidable preference to the tune of $135,-549.70. *See* 11 U.S.C. § 547(b). However, there also exists the possibility that the full $200,000 was a retainer, in which case the debtor might be able to retrieve some of this money as an excessive attorney's fee under 11 U.S.C. § 329(b). The most GHR could recover under § 329(b) is $78,807.63, since the bankruptcy court allowed total post-petition legal fees in favor of WS & G in the amount of $121,192.37.

It was these two possibilities, apparently, that led GHR to resist paying to WS & G the bankruptcy court's first allowance of post-petition legal fees in favor of WS & G in the amount of $47,532.97. WS & G responded by filing a motion to compel payment of the interim allowance, which

motion the debtor opposed. The debtor then filed a cross-motion for repayment of an excessive retainer under 11 U.S.C. § 329(b), which motion WS & G opposed. The debtor then began to contemplate a preference action against WS & G under 11 U.S.C. § 547(b). Litigation loomed.

Instead of embroiling themselves in a lawsuit, WS & G and GHR proposed a compromise of the controversy to the bankruptcy court. Pursuant to this settlement, GHR agreed to pay immediately one-half of the interim fees owed under the bankruptcy court's first allowance. This came to $23,766.49. GHR further agreed to pay soon thereafter the full amount of the bankruptcy court's second allowance, $9,209.40. In return, WS & G dropped its motion to compel payment and its request for interest and sanctions. The remaining $23,766.49 was added to the proof of claim WS & G had filed with the bankruptcy court for GHR's outstanding legal debt at the time of the petition filing. This was accomplished by "deeming" the $64,450.30 retainer of January 14, 1983 to be instead $88,216.79, thus reducing the amount of the $200,000 that went to GHR's old legal debt and increasing that unsecured old legal debt by $23,766.49. GHR further agreed to drop its § 329 "cross-motion" for repayment of excessive retainer and agreed to waive all preference claims against WS & G, whether arising out of the $200,000 pre-petition payment or not.

The Banks objected to this proposed compromise, arguing that WS & G's agreement to become an unsecured creditor as to $23,-766.49 was insufficient consideration for GHR's agreement to give up all preference claims against WS & G.

Despite the Banks' objections, the bankruptcy court approved the proposed compromise, stating only that the "compromise of the controversies as described in the foregoing motion and the annexed stipulation is fair, reasonable and in the best interest of these estates . . . ." Order (May 16, 1984).

On appeal, the Banks argue that the bankruptcy court has to explain on the

record why it approved the compromise, that the record as it exists is inadequate to evaluate the merits of GHR's preference claims and whether it was advisable for GHR to give them up, and that what little record there is shows that at the least GHR is likely to prevail on its excessive retainer claim after short, simple litigation and therefore be entitled to a return of $78,-807.63. WS & G points out that approval of proposed compromises is within the bankruptcy court's discretion and that when one looks at all the factors that the bankruptcy court must have been aware of, approval of the compromise was not an abuse of the bankruptcy court's discretion. Specifically, WS & G argues that GHR was undisputably in violation of the bankruptcy court's first interim allowance order, that GHR's preference claims are illusory, because all creditors expect to get 100 cents on the dollar under the reorganization plan, that the *most* GHR could recover under § 329(b) is $78,000 and even that is high, because WS & G has continued to provide special counsel services to GHR since the bankruptcy court's second interim allowance, and that none of GHR's four creditors' committees objected to this settlement.

## DISCUSSION

■ The Court agrees with WS & G that the bankruptcy court's approval of a compromise must be judged by an abuse of discretion standard. *In the Matter of AW-ECO, Inc.,* 725 F.2d 293, 297 (5th Cir.1984); *In the Matter of Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir.1982); *In re Continental Investment Corp.,* 642 F.2d 1, 3 (1st Cir.1981); *In re Continental Investment Corp.,* 637 F.2d 8, 11 (1st Cir. 1980). Although these are cases under § 27 of the old 1898 Bankruptcy Act, 11 U.S.C. § 50, they were also decided under the old Bankruptcy Rule 919(a), which is largely the same as the current Rule 9019(a):

> On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other persons as the court may designate, the court may approve a compromise or settlement.

The Court rejects the Banks' assertion that the appropriate standard of review here is the "clearly erroneous" standard of Rule 8013. This standard applies only to the bankruptcy court's findings of fact and in any event, in this case there are no findings of fact for this Court to review.

■ In fact, it is just this lack of factual findings and reasons for compromise approval that require this Court to remand to the bankruptcy court for further proceedings. In approving a settlement compromise, the bankruptcy court must assess the merits of the claims the debtor is giving up and weigh these against the proposed advantage for the debtor's estate. *In the Matter of Boston & Providence Railroad Corp.,* 673 F.2d 11, 12 (1st Cir.1982). Specifically, the bankruptcy court must consider "the probability of success of the litigation, the difficulties of discovery, the complexity, expense, and delay incurred by the litigation, and the paramount interest of the creditors." *In re Continental Investment Corp.,* 637 F.2d at 11. Furthermore, the bankruptcy court's analysis must "be set forth on the record in sufficient detail that a reviewing court could distinguish it from 'mere boilerplate approval' of the trustee's suggestions." *In the Matter of Boston & Providence Railroad Corp.,* 673 F.2d at 12.

■ Here, there is no analysis, but merely a statement by the bankruptcy court that the proposed compromise "is fair, reasonable and in the best interest of these estates ...." Furthermore, the record as to the strength of GHR's possible preference and excessive retainer claims against WS & G is not adequate enough for this Court to determine if the bankruptcy court abused its discretion in approving the compromise. Accordingly, this Court must remand to the bankruptcy court for further development of the record and for a statement of reasons for approval of the compromise.

The Court wishes to stress that it in no way wishes to imply that the bankruptcy court in fact abused its discretion here. The Court recognizes that in light of the anticipated 100 cent return on the dollar contemplated by the reorganization plan and the complexity of preference litigation, GHR's waiver of its preference claims against WS & G may well have been in its best interests. The Court also notes that the possible advantages of a $78,807.63 recovery on GHR's § 329(b) claim might pale in contrast to the expenditure of legal fees necessary to successfully litigate this claim. Rather, the Court remands only so that the bankruptcy court may set out its reasons for approval or possibly, after further investigation of the merits of GHR's claims, for disapproval of the proposed compromise.

An appropriate Order shall issue.