**In re Jeffrey S. ANOLIK, Debtor.**

**Appeal of Jeffrey S. ANOLIK.**

**No. 86–40574–JFQ.**

**Bankruptcy No. 89–30087–F.**

United States District Court,
D. Massachusetts.

Nov. 27, 1989.

Peter M. Stern, Springfield, Mass., Trustee.

Darragh K. Kasakoff, Seder & Chandler, Worcester, Mass., for debtor.

MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I. INTRODUCTION

Before the Court is an appeal by Jeffrey Anolik ("Anolik") from a decision of the Bankruptcy Court approving a motion by Trustee Peter M. Stern ("Stern") to compromise a claim of the estate against Walter M. Labonte. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 158(a).

The trustee has filed a brief opposing Anolik's appeal. For the reasons set forth below, the Court will deny Anolik's appeal.

## II. FACTS

On October 19, 1986, Anolik filed a petition for reorganization under Chapter 11. The petition was converted to a Chapter 7 liquidation petition by the Bankruptcy Court on June 30, 1987. At all times relevant to these proceedings, Stern has served as trustee. Brief of Trustee–Appellee Peter M. Stern ("Stern Brief") at 1–2.

### A. State Court Proceedings

Among the assets which the debtor had in his possession when he filed his Chapter 11 petition were "several pending and unfiled suits and claims against individuals involved in the ownership, transfer, and management of property located at 288 Pleasant Street, Northampton, Massachusetts" ("288 Pleasant"). Brief of Debtor–Appellant Jeffrey S. Anolik ("Anolik Brief") at 5.

The various "suits and claims" arose out of Anolik's business association with Demetrios Panteleakis ("Demetrios"), with whom Anolik formed the corporation Icarian on February 29, 1984. On the same day, Demetrios, Anolik and Icarian entered into a written agreement with Evelyn Panteleakis ("Evelyn"), the then owner of 288 Pleasant. The written agreement, attached as Exhibit D to the Anolik Brief, states that: (a) Demetrios and Anolik were buy-ing 288 Pleasant; (b) Icarian would be owned equally by Demetrios and Anolik; and (c) Evelyn would lease 288 Pleasant and certain equipment from Icarian for $1,000.00 per month. Also on the same day, the parties executed a purchase and sale agreement conveying 288 Pleasant from Evelyn to Icarian for a purchase price of $110,000.00. Evelyn took back a mortgage from Icarian (with Demetrios and Anolik co-signing as individuals) in the amount of the purchase price. Anolik Brief at 7 and Exhibits E and F.

What was apparently a friendly business relationship rapidly deteriorated over the summer of 1984. In fact, things degenerated to the point where the debtor felt it necessary to file suit in Hampshire Superior Court against Demetrios, Evelyn and Icarian in order to establish his ownership in Icarian. Anolik Brief at 7. On September 21, 1984, the Hampshire Superior Court granted Anolik's motion for a preliminary injunction. *Id.* Under the terms of the injunction, Icarian and Demetrios were estopped from "interfering with, transferring, contracting, selling, withdrawing, removing, disposing or distributing any part of the property owned or in the possession of Icarian, Inc." Anolik Brief at 7 and Exhibit G. The injunction was subsequently modified by the court on March 26, 1985 to allow Icarian and Demetrios to tear down "dangerous or unsafe" portions of the building. Anolik Brief at 7 and Exhibit I.

Despite the existence of the preliminary injunction, Icarian conveyed 288 Pleasant to the Panteleakis Realty Trust ("Trust")[1] on October 22, 1986. The deed of transfer was signed only by Demetrios in his capacity as president of Icarian. Anolik Brief at 8 and Exhibit J. On July 23, 1987, Nicholas Panteleakis, as trustee of the Trust, conveyed 288 Pleasant to Walter Labonte ("Labonte") for a purchase price of $250,000.00. Anolik Brief at 9 and Exhibit K.

Stern, who had been supervising Anolik's estate for over a year, hired Richard M.

---

1. Evelyn and Nicholas Panteleakis are the sole trustees and beneficiaries of the Panteleakis Re-alty Trust. Anolik Brief at 5.

428

Howland, Esq., as special counsel and filed suit against Icarian, Labonte, Demetrios, and Evelyn and Nicholas Panteleakis. Anolik Brief at 5. Through his suit, Stern sought: (a) recision of the sale of 288 Pleasant by Icarian to the Trust; (b) recision of the subsequent sale of 288 Pleasant to Labonte; (c) a finding of contempt for the defendants' failure to comply with the injunction obtained in the earlier suit; (d) a finding that Anolik is a fifty percent owner of Icarian; and (e) damages for intentional infliction of emotional distress. Anolik Brief at 5–6.

Stern and Labonte filed cross motions for summary judgment in the spring of 1988. On May 26, 1988, Judge Moriarty of the Hampshire Superior Court denied both motions, concluding that genuine issues of material fact remained, and that not all interested persons were a party to the action. Anolik Brief, Exhibit B.

During the next several months, negotiations were held between Stern and Labonte to settle the action against Labonte for monetary damages. Stern Brief at 2. After consultation with Attorney Howland and his own evaluation of the case, Stern agreed to accept a settlement offer of $25,000.00 from Labonte. Stern Brief at 2–3.

### B. United States Bankruptcy Court Proceedings

On October 11, 1988, Stern filed a motion in Bankruptcy Court to compromise the claim against Labonte for the agreed-upon amount. Anolik Brief, Exhibit L. Anolik opposed the motion, arguing in part that his claim against Labonte is worth far more than $25,000.00.[2] Anolik Brief, Exhibit M. Following a hearing, Bankruptcy Judge Queenan issued an order approving Stern's compromise of the claim against Labonte. Specifically, Judge Queenan stated that:

7. The Trustee seeks the Court's approval to compromise the claim against Labonte for the sum of $25,000. This

compromise appears to be reasonable to the Court, based upon serious questions concerning the following:

A. The Debtor's ownership of stock in Icarian, Inc.

B. The Debtor's consent to the deed from Icarian, Inc. to said Trust.

C. Whether or not Labonte is a *bona fide* purchaser.

D. The rights of the First National Bank of Boston, the present mortgage holder of the premises, which has not been joined as defendant in the state court.

E. The value of the property as the result of the fire.

F. The Debtor's actual damage in view of encumbrances upon the property at the time it was owned by Icarian, Inc.

G. The value of the property at the time of its transfer from Icarian, Inc. to said Trust.

H. The natural sympathy that a judge or jury may have for Labonte despite any technical deficiencies in his chain of title.

I. Judgment collection.

J. Credibility of the Debtor as a witness.

It is therefore ORDERED that the Trustee's motion to compromise the claim against Walter Labonte is approved.

*In re Anolik*, Ch. 7 No. 86–40574–JFQ, slip op. at 2–3 (Bankr.D.Mass. Dec. 22, 1988), attached as Exhibit O to the Anolik Brief. Anolik filed a timely appeal to this Court on January 6, 1989.

### III. DISCUSSION

#### A. Standard of Review

In this particular case, Anolik claims that Bankruptcy Judge Queenan did not consider all of the factors relevant to a determination regarding the compromise of claim.

---

2. In his brief, the trustee states that the Anolik suit as a whole is worth no more than $60–70,000.00, a figure based on a recovery of half of the profit earned on the sale of the property by the Trust to Labonte. Stern Brief at 3. How-

ever, at a hearing held by Judge Queenan on the trustee's motion, Anolik argued that his potential recovery against Labonte was the full value of the property, or $250,000.00. Anolik Brief, Exhibit N, pp. 24–27.

A bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a), which states as follows:

> On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.

The approval of a compromise is within the sound discretion of the bankruptcy judge, *In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr.D.Mass.1985), and this Cou.t will not overturn a decision to approve a compromise absent a showing that the bankruptcy judge abused his discretion. *See In re Continental Investment Corp.*, 642 F.2d 1, 3 (1st Cir.1981); *In re Continental Investment Corp.*, 637 F.2d 8, 11 (1st Cir.1980); *Continental Ill. Nat. Bank v. Widett, Slater & Goldman*, 47 B.R. 925, 927 (D.Mass.1985) (Freedman, J.) ("[B]ankruptcy court's approval of a compromise must be judged by an abuse of discretion standard"). As then–District Judge Selya once wrote, "[t]he cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapplied the law, or misconstrued its own rules." *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727 (1st Cir.1984).

Anolik also challenges the factual findings upon which the granting of the motion to compromise was based. The second attack requires a different approach; this Court's review of the bankruptcy judge's findings of fact are governed by Bankruptcy Rule 8013, which reads as follows:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set

aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

The First Circuit has applied this standard in the bankruptcy context most recently in *In re Bible Speaks (Dovydenas v. The Bible Speaks)*, 869 F.2d 628, 629–30 (1st Cir.), *cert. denied sub nom. The Bible Speaks Inc. v. Dovydenas*, —— U.S. ——, 110 S.Ct. 67, 107 L.Ed.2d 34 (1989); *see also In re Stacy*, 99 B.R. 142, 148 (D.Mass.1989) (Freedman, C.J.).

**B. Factors to be Considered by the Bankruptcy Judge**

When considering whether or not to approve a compromise proposed by a trustee, the bankruptcy judge "must do more than give 'mere boilerplate approval.'" *In re GHR Companies, Inc.*, 50 B.R. at 931, *quoting In re Boston & Providence Railroad Corp.*, 673 F.2d 11, 12 (1st Cir.1982). In particular, the bankruptcy judge "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* The specific factors which a bankruptcy judge should consider include:

> (a) the probability of success in the litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*In re Lawrence Paperboard Corp.*, 52 B.R. 907, 909 (Bankr.D.Mass.1985). The bankruptcy judge's failure to consider these factors or ones substantially similar[3] would be grounds for finding that the bankruptcy judge abused his discretion.

---

**3.** For instance, the First Circuit has suggested that one factor to be considered is the "difficulty of discovery." *In re Continental Investment Group*, 637 F.2d 8, 11 (1st Cir.1980). This Court applied that factor itself in *Continental Ill. Nat. Bank*, 47 B.R. at 927. However, more recent cases suggest that the difficulty of *collection* of an eventual judgment is of greater importance, particularly since the difficulty of discovery can be seen as part of the overall complexity of the case. *See, e.g., In re Greenacre*, 103 B.R. 1, 4–5 (Bankr.D.Me.1989).

Stern suggests that the nature of the bankruptcy proceeding (liquidation) involved in this case allows the bankruptcy judge to conduct a less vigorous review of the proposed compromise. Stern Brief at 8, *citing In re Blair*, 538 F.2d 849, 852 (9th Cir.1976). It is true that the Ninth Circuit has suggested that a greater degree of scrutiny by the bankruptcy judge is required in Chapter X proceedings (Corporate Reorganization), where, for instance, the issue of the future earnings of the corporation must be addressed. *Id.* at 852 n. 2. However, the Ninth Circuit explicitly stated that the bankruptcy judge *and* the trustee have an obligation to review the proposed compromise under standards virtually identical to the ones set forth above. *Id.* at 851; *contra In re Heissinger Resources Ltd.*, 67 B.R. 378, 382 (C.D.Ill.1986) (No specific standards required in liquidation proceedings).

## C. The Bankruptcy Judge Did Not Abuse His Discretion

■ Having reviewed not only the bankruptcy judge's decision, but also the record underlying this appeal, the Court concludes that the bankruptcy judge did not abuse his discretion in approving the compromise proposed by the trustee.

In particular, it is clear that Judge Queenan considered and placed considerable emphasis on the first factor, the debtor's probability of success in the litigation. Anolik claims that Judge Queenan merely noted "serious questions" regarding the debtor's ability to prevail. Anolik Brief at 16. However, those "serious questions," when taken in their entirety, illustrate to this Court (as they apparently did to Judge Queenan) that the debtor's likelihood of success in the pending state litigation is doubtful.

It is also clear that Judge Queenan considered the second factor, the difficulty of collection, since that is one of the specific items about which he felt there was "serious question." *In re Anolik*, Ch. 7 No. 86–40574–JFQ, slip op. at 3 (Bankr.D.Mass. Dec. 22, 1988), attached as Exhibit O to the Anolik Brief. While it would have been useful to this Court had the factual basis of that uncertainty been made clear, particularly with respect to Labonte, it must still be acknowledged that Judge Queenan looked to the difficulty of collection as one of the factors supporting the approval of the compromise.

As to the final two factors—the complexity of the litigation and the ultimate interest of creditors and the estate—their role in the approval of the compromise can readily be inferred from the kinds of issues about which Judge Queenan had serious question. As Judge Queenan's decision reflects, the state court proceeding is a multiple-party suit, involving the disputed ownership of a corporation, which in turn may or may not own property of disputed value and condition. While the litigation is not of the complexity of the fabled *Jarndyce v. Jarndyce*,[4] it is nonetheless sufficiently convoluted to insure a lengthy period of time before any resolution.

It is even more apparent to this Court that the best interests of the estate's creditors were a factor in Judge Queenan's willingness to ratify the trustee's recommendation. In light of his skepticism regarding the debtor's likelihood of prevailing against Labonte, and the amount of time it would take to do so, it is clear that Judge Queenan implicitly concluded that Anolik's creditors would be best served by a definite recovery of $25,000.00 from Labonte.

As Anolik rightly notes, more explicit analysis by the bankruptcy judge on these various factors would have clarified the decision to approve the compromise. Nonetheless, a fair reading of the concerns raised by Judge Queenan illustrates that he did not abuse his discretion in agreeing to the proposed settlement.

## D. The Bankruptcy Judge's Findings of Fact Were Not Clearly Erroneous

Of the various factual findings made by Judge Queenan in support of his decision, Anolik questions only the following three:

. . . .

4. *See* C. Dickens, *Bleak House* (Bantam Classic ed. 1983).

(B) The Debtor's consent to the deed from Icarian, Inc. to said Trust.

. . . .

(F) The Debtor's actual damages in view of encumbrances upon the property at the time it was owned by Icarian Inc.

(G) The value of the property at the time of its transfer from Icarian, Inc. to said Trust.

Anolik Brief at 17, *citing from In re Anolik*, Ch. 7 No. 86–40574–JFQ, slip op. at 3 (Bankr.D.Mass. Dec. 22, 1988), attached as Exhibit O to the Anolik Brief. In Anolik's view, there is insufficient evidence on the record for the bankruptcy judge to conclude that serious questions exist about those issues.

An examination of the record reveals that Judge Queenan's findings of fact with respect to these issues were not clearly erroneous. For instance, while there may not be a serious question with respect to whether or not Anolik approved a transfer of 288 Pleasant from Icarian to the Trust, there is a serious question as to whether or not his approval was in fact needed, since it is not certain at this point just what Anolik's status in the Icarian corporation is. *See Stern v. Panteleakis et al.*, C.A. No. 87–350, slip op. at 7–10 (Super.Ct.Mass. June 1, 1988) (Moriarty, J.), attached as Exhibit B to the Anolik Brief. In fact, Anolik himself had to file a lawsuit to determine his position in the company. *See Anolik v. Panteleakis*, C.A. No. 84–259 (Super.Ct.Mass.).

The Court also finds that the bankruptcy judge's findings with respect to the value of the property were not clearly erroneous. The record clearly indicates that the property was damaged by fire, which certainly decreases its value by some as yet undetermined amount. *See Anolik v. Panteleakis*, C.A. No. 84–249, slip op. at 2 (Super. Ct.Mass. March 26, 1985) (Parado, J.). Even if the property's value were known, however, it is not clear what damages the debtor would be entitled to in light of his uncertain position with respect to Icarian and Icarian's uncertain position with respect to the property itself.

As there is ample support on the record for the bankruptcy judge's conclusions, the Court holds that his findings were not clearly erroneous.

## IV. CONCLUSION

For the reasons set forth above, the debtor Anolik's objections to the bankruptcy judge's approval of the trustee's motion to compromise the debtor's claim against Walter Labonte are OVERRULED.

It is So Ordered.