In re C.P. del CARIBE, INC., Debtors.

In re EER REALTY, S.E., Debtors.

In re EMERITO ESTRADA RIVERA
PARTS AND SERVICE, INC.,
Debtors.

In re EER AGRICULTURAL
EQUIPMENT, INC.,
Debtors.

In re BORICUA MOTORS
CORPORATION,
Debtors.

In re EMERITO ESTRADA RIVERA,
INC., Debtors.

In re ISUZU del CARIBE, INC., Debtors.

In re JEEP/EAGLE de PUERTO
RICO, INC., Debtors.

In re EMERITO ESTRADA RIVERA–
ISUZU de P.R., INC., Debtors.

In re CARIBE MOTORS PROPERTY
CORP., Debtors.

In re E.E.R. REALTY CORP., Debtors.

In re DAIHATSU de PUERTO
RICO, INC., Debtors.

In re EER ENTERPRISES,
INC., Debtors.

In re BORICUA MOTORS LEASING
CORPORATION, Debtors.

Bankruptcy Nos. B–91–00497(ESL)
to B–91–00510(ESL).

United States Bankruptcy Court,
D. Puerto Rico.

May 21, 1992.

Perez Bachs of McConnell, Valdes, Kelley, Sifre, Griggs & Rafael Ruiz–Suria, San Juan, Puerto Rico, for Chrysler Credit de P.R.

Jose M. Pizarro, Asst. U.S. Atty., Hato Rey, P.R., for the Small Business Admin. and the U.S. Customs Service.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

A joint "Stipulation and Notice" was filed on February 25, 1992, by debtors and the Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico (hereinafter "Treasury"), the culmination of months of negotiations between the parties, by which they purport to compromise and settle all of Treasury's claims against the debtors for withholding taxes, personal property taxes, real property taxes, excise taxes and income taxes. The court granted twenty days from notice of the filing of the stipulation for any party in interest to object to the same. Chrysler Credit de Puerto Rico, S.A. filed an objection to the stipulation on April 2, 1992. A hearing was held on the stipulation and Chrysler's objection thereto on April 23, 1992, at which time the Court entered a bench ruling disapproving the stipulation and indicated that it would enter a separate opinion and order.

*Background*

Debtors filed their voluntary petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code on January 25, 1991. The lists of creditors accompanying the petitions included Treasury for a total amount of $1,470,234.11.[1] On May 29, 1991, Treasury filed proof of claims against the debtors in the total amount of $19,147,060.88.[2] Debtors objected to these claims

Charles A. Cuprill Hernandez of Ponce, Puerto Rico, for debtors.

Kenneth Colon, Director, Federal Litigation Div., and Viviana Rodriguez, of the Dept. of Justice of the Com. of Puerto Rico, San Juan, P.R., for the Dept. of Treasury.

1. Case No. 91–00498: $600,000.00; 91–00499: $823.11; 91–00501: $239,503.00; 91–00502: $27,498.00; 91–00504: $316,980.00; 91–00505: $6,500.00 (unsecured), $232,720.00 (priority); 91–00506: $46,210.00.

2. Although $39 million is the oft-cited figure for Treasury's original claim against debtors (see, e.g. Lorelei Albanese, "Court rejects $2.2 million

EER tax settlement", San Juan Star, May 6, 1992, at B–7; "Misla demands EER tax probe", San Juan Star, February 15, 1992, at B–4; Maria Judith Luciano, "Pesquisa cameral a la reduccion de la deuda de Emerito Estrada", El Nuevo Dia, February 11, 1992, at 10; Doug Zehr, "Estrada Rivera tax bill cut by $16.1 million", San Juan Star, February 7, 1992, at B–2; Eva I. Lizardi, "Transigen una deuda millonaria", El

on June 26, 1991, arguing that they do not owe the taxes claimed, that the surcharges claimed are not allowable under the Code, and that the excise taxes claimed are not due and payable pursuant to the Excise Tax Act of 1987. Treasury filed an opposition to the objection to claims on July 5, 1991.

On August 15, 1991, a hearing was held on the objections to claims, at which Treasury requested additional time to amend their claims, which they stated had been revised and reduced by a substantial amount between $5,500,000.00 and $7,000,-000.00. The court granted Treasury's request for ten days, or until August 25, 1991, to file amended proofs of claim, except in the case no. 91–00505, in which fifteen days, or until August 30, 1991, were granted. Additionally, the court granted the parties sixty days to file legal briefs and ninety days to complete any and all necessary discovery. The court recognized the impact of Treasury's claims on debtors' reorganization and the importance of a timely decision on the objections to said claims.

On September 5, 1991, Treasury requested an extension of time of five days, or

until September 10, 1991, to file their amended claims, and said request was granted. Subsequently, Treasury filed amended proofs of claim in the total amount of $11,427,623.52 [3] on September 13 and 19, 1991. Debtors filed a motion to dismiss Treasury's claims on September 16, 1991, for failure to timely file the amended claims, and Treasury filed an opposition thereto on September 24, 1991.

A pre-trial conference was set for December 11, 1991, and the parties were ordered to file a proposed pre-trial order at least seven days before the date set. The court set for hearing on that same date debtors' motion to dismiss Treasury's amended claims and debtors' urgent application for an order to show cause against Treasury.[4]

The parties filed a proposed pre-trial order on December 10, 1991. The pre-trial conference was held in chambers on December 11, 1991. At that time the parties agreed that the claims would ultimately be reduced to an amount between $2,000,-000.00 and $5,000,000.00 for all types of taxes owed in all of the cases. The parties further agreed that all discovery and exchange of documents would be completed

Nuevo Dia, February 7, 1992 at 46.), no evidence of such amount is found in the court's records. The only reference to the $39 million figure was made by debtors' attorney at the hearing held on August 15, 1991 ("The original demand of the Department of the Treasury for the Commonwealth of Puerto Rico against the Debtor—Debtors included in these cases was in excess of $34 million.") See transcript of hearing, docket # 114 in 91–00502 at p. 3.

Subsequently, the attorneys for Treasury stated at the hearing held on April 23, 1992, that the first set of proof of claims Treasury filed represented its initial estimate of the amount owed. See transcript of hearing, docket # 214 in 91–00502 at p. 31. That estimate was made before making a detailed, independent review of the debt, and before entering into any discussion with, or receiving proof of payments from, the debtors. *Id.* at p. 32.

Treasury filed claim No. 51 in 91–00499 for $24,555.11; claim No. 22 in 91–00501 for $2,987,671.42; claim No. 93 in 91–00502 for $4,882,157.92; claim No. 17 in 91–00503 for $26,117.12; claim No. 16 in 91–00504 for $2,360,176.53; claim No. 38 in 91–00505 for $1,077.56 and claim No. 41 in 91–00505 for $7,400,004.93; claim No. 26 in 91–00506 for

$5,791.67; claim No. 18 in 91–00508 for $1,037,-524.63; claim No. 59 in 91–00509 for $376,-213.95 and claim No. 60 in 91–00509 for $45,-770.04.

**3.** Treasury filed amended claim No. 73 in 91–00499 for $175,208.70; amended claim No. 27 in 91–00501 for $395,385.22; amended claim No. 154 in 91–00502 for $1,877,387.24; amended claim No. 20 in 91–00503 for $24,744.18; amended claim No. 22 in 91–00504 for $107,-571.39; amended claim No. 46 in 91–00505 for $7,450,582.94; amended claim No. 29 in 91–00506 for $5,677.27; amended claim No. 22 in 91–00508 for $994,690.65; and amended claim No. 72 in 91–00509 for $396,375.93. See transcript, docket # 167 in 91–00502.

**4.** On December 2, 1991, debtors filed an urgent application for an order to show cause in cases no. 91–00497, 91–00501, 91–00504, 91–00505, 91–00508, and 91–00509. The motion asked the court to direct Treasury to show cause why they should not allow debtors to satisfy excise taxes for individual vehicles under the Amnesty Law (Law 88 of October 25, 1991) without penalties and surcharges, and why Treasury should not refund to debtors the interest and surcharges paid after the Amnesty Law went into effect.

on or before December 24, 1991, at 12:00 p.m., and a settlement conference was scheduled for December 30, 1991. Debtors withdrew their motion to dismiss claims. As to the urgent application for an order to show cause, the court entered a bench ruling directing Treasury to return to debtors the amount of $48,025.77 paid in interest and surcharges on 139 vehicles sold after the Amnesty Law went into effect, and to accept payment on individual vehicles sold thereafter in accordance with the court's findings.[5]

On December 26, 1991, debtors filed an "Urgent Motion Relative to Settlement Conference", informing the court that as of that date Treasury had failed to meet with them or exchange any documents, and requesting that the settlement conference be continued. However, the settlement conference was held on December 30, 1991, at which time the court ordered the parties to meet on January 30, 1992 to mark evidence and file any amendments to the pre-trial order, and scheduled the trial for February 6, 1992. The court found that a meaningful settlement conference could not be held because Treasury failed to produce the documents it had agreed to produce by December 24, 1991, without a valid reason therefore, and imposed sanctions in the amount of $1,000.00, plus attorney's fees, upon Treasury.

On December 30, 1991, debtors filed an urgent motion for compliance with this court's bench order of December 11, 1991, and requested sanctions and attorney's fees. At the aforementioned settlement conference held on December 30, 1991, Treasury expressed doubts as to the meaning of the bench ruling. Accordingly, on January 3, 1992, the clerk of the Court entered judgment ordering Treasury to return the amount of $48,025.77 to debtors and to accept payments made in accordance with the terms of this court's order. On January 8, 1992, Treasury filed, in six of the above-captioned cases[6], a "Motion to Alter or Amend Judgment under Rule 9023", wherein they request that the $48,025.77 be set off against post-petition taxes owed by debtors.

The parties met extensively on January 30, 1992, at which time debtors had their evidence marked for trial, while Treasury did not submit any evidence. The parties were ordered to file legal briefs and the amended pretrial order by 12:00 p.m. on February 4, 1992.

At the hearing held on February 6, 1992, the court noted that the parties had informed the court, via a conference call the previous day, that they reached an agreement to settle Treasury's claims. The parties were granted fifteen days, or until February 21, 1992, to file the stipulation and give notice to all parties. The parties filed the stipulation on February 25, 1992.

As of January 30, 1992, as set forth in the stipulation, Treasury further amended its proofs of claim in the total amount of $4,651,416.64[7].[8] The parties agreed to compromise and settle these claims in the amount of $2,235,297.22, consisting of

---

5. The court found that the interest and surcharges were due and owing on the vehicles at the time the Amnesty Law became effective as more than six months had elapsed since the date of importation, that a tax deficiency was never notified to debtors, and that the importation of each vehicle gave rise to a separate taxable event within the meaning of the Amnesty Law. See transcript, docket # 167 in 91–00502 at pp. 6–7.

6. The motion was filed in 91–00497, 91–00501, 91–00504, 91–00505, 91–00508, and 91–00509.

7. Amended claim No. 73 in 91–00499 for $170,-380.04; amended claim No. 27 in 91–00501 for $15,046.73; amended claim No. 154 in 91–00502 for $900,486.50; amended claim No. 20 in 91–00503 for $19,614.88; amended claim No. 22 in 91–00504 for $20,729.41; amended claim No. 46 in 91–00505 for $3,439,509.35; amended claim No. 29 in 91–00506 for $6,425.70; amended claim No. 22 in 91–00508 for $33,681.90; and amended claim No. 72 in 91–00509 for $45,-544.13.

8. The attorneys for Treasury stated at the hearing held on April 23, 1992, that the adjustment made to arrive at this figure did not entail any condoning of debtors' tax debt. See transcript, docket # 214 in 91–00502 at p. 35. Rather, the adjustment was made after considering payments made by debtors and evidence submitted by debtors showing that the amounts were not owed. *Id.* at p. 34.

$735,297.22 [9] in secured and priority claims pursuant to 11 U.S.C. § 507(a)(7), which were to be paid by debtors on or before April 30, 1992, and $1,500,000.00 in general unsecured claims, which were to be paid according to the plan. Furthermore, the parties agreed to the set off of the amount of $48,025.77, which Treasury was ordered by this court to return to debtors, against debtors' indebtedness for priority post-petition excise taxes. The parties jointly moved the court to set aside the sanctions and attorney's fees which were imposed upon Treasury for their consistent, repeated, and unjustified failure to comply with deadlines ordered by this court.

On April 2, 1992, Chrysler Credit filed an objection to the stipulation between debtors and Treasury as it relates to the immediate payment (that is, on or before April 30, 1992) of certain pre-petition tax obligations. Specifically, it objected to the stipulation's failure to expressly indicate which of the debtors will make which tax payment and in what amount, given that the estates have not been substantially consolidated. Furthermore, Chrysler Credit objected to the payment of any pre-petition obligations by any debtor whose property is already subject to the pre-petition liens and post-petition super-priority of Chrysler Credit. Finally, it objected to the payment of pre-petition obligations prior to the approval of the plan of reorganization. Chrysler Credit stated that it does not object to the substance of the proposed settlement; in fact, it believes the terms are fair and should be approved. However, it believes that payment of Treasury's claims should be delayed until their priority is determined and the plans of reorganization are confirmed.

A hearing on Chrysler's objection to the stipulation was held on April 23, 1992.

Debtors and Chrysler requested that the hearing be continued due to the fact that payment to Treasury by April 30 pursuant to the stipulation between Treasury and debtors would endanger the settlement being negotiated by and between debtors and Chrysler. In the alternative, Chrysler suggested that the payment to be made to Treasury by April 30 be placed with the court pending approval of the stipulation. Said alternative was not accepted by the attorneys for Treasury, who stated that they were not in a position to alter the terms of the stipulation. They further expressed concern that approval of their stipulation depended upon debtors' settlement with Chrysler. Two additional creditors, the Small Business Administration [10] and United States Customs Service [11], joined Chrysler's objection to the stipulation, and informed the court that they were not notified of the stipulation nor of the hearing.

Upon reexamining the proposed settlement in light of the parties arguments, the court declined to approve the stipulation for the reasons set forth below. Treasury was granted fifteen days to file amended proof of claims, and thirty days to show cause why they should not be bound by the pretrial conference held on January 30, 1992, and the "Amended Proposed Pretrial Order" filed on February 4, 1992.

### Discussion

■ Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that the court may approve a compromise or settlement upon motion of the trustee or debtor in possession and after a hearing on twenty days notice to all creditors and the United States Trustee. Compromise and settlement of litigation is favored in bankruptcy.[12] 9 Lawrence P. King et al., *Collier on*

---

9. At the hearing held on April 23, 1992, the parties agreed to this amount irrespective of whether the stipulation was approved or not. See transcript, docket # 214 in 91–00502 at pp. 36, 44.

10. SBA holds a secured claim in the amount of $179,956.66 in 91–00505, secured by a property, valued at $200,000.00.

11. Customs holds two priority claims for customs duties, one for $397,201.89 in 91–00505, and another for $1,776,492.08 in 91–00508.

12. In general, there is a clear policy in favor of encouraging settlements. *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir.1990). However, "district courts are duty bound to scrutinize even voluntary settlement proposals and should not give automatic approval to such matters, irrespective of the gener-

*Bankruptcy* ¶ 9019.03[1] at 9019–3 (15th ed.1991); *In re New York, N.H. & H.R. Co.*, 632 F.2d 955, 959 (2d Cir.1980); *In re Greenacre*, 103 B.R. 1, 5 (Bankr.D.Me. 1989); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr.D.R.I.1986). However, the First Circuit has noted that

> [a] court approving a compromise in reorganization proceedings does not play the same role as a court approving a compromise between individual litigants. Bankruptcy proceedings, by definition, coerce the bankrupt's creditors into a compromise of their interests. Therefore, ... the supervising court must play a quasiinquisitorial role, ensuring that all aspects of the reorganization are "fair and equitable."

*In re Boston & Providence Railroad Corporation*, 673 F.2d 11, 12 (1st Cir.1982); *In re Correa Rodriguez*, 123 B.R. 153, 154 (Bankr.D.P.R.1991). Furthermore, "the court must act independently, out of its own initiative, for the benefit of all creditors." *Id.* at 13.

In determining whether or not to approve a proposed compromise or settlement, most courts consider the following factors:

1. the probability of success in the litigation;
2. the difficulties, if any, to be encountered in the matter of collection;
3. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
4. the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Collier* at ¶ 9019.03[2], p. 9019–5, *citing Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). *See also, Boston & Providence Railroad*, 673 F.2d at 12; *In re Continental Investment Corporation*, 637 F.2d 8, 11 (1st Cir.1980); *In re Anolik*, 107 B.R. 426, 429 (D.Mass.1989); *Continental Illinois Nat. Bank & Trust Co. v. Widett,*

al policy in favor of encouraging settlements."

*Slater & Goldman, P.C.*, 47 B.R. 925, 927 (D.Mass.1985); *In re Public Service Company*, 114 B.R. 820, 826 (Bankr.D.N.H. 1990); *Greenacre*, 103 B.R. at 5; *Hydronic*, 58 B.R. at 365; *In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr.D.Mass.1985); *In re Wells*, 26 B.R. 150, 152 (Bankr.D.R.I. 1983).

██ The decision of whether to approve a compromise or settlement of a claim by or against the estate is within the sound discretion of the bankruptcy judge. *Collier* at p. 9019–5; *Anolik*, 107 B.R. at 429; *Correa*, 123 B.R. at 154; *Public Service Company*, 114 B.R. at 826; *Greenacre*, 103 B.R. at 4; *Hydronic*, 58 B.R. at 365; *GHR*, 50 B.R. at 931. However, the bankruptcy court must set forth its analysis with sufficient detail to distinguish it from mere "boilerplate approval" of the proposed compromise. *Boston & Providence Railroad*, 673 F.2d at 12; *Continental Illinois National Bank*, 47 B.R. at 927. The judge must apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and must set out the reasons for his decision; these findings show that the judge properly exercised his discretion. *In re American Reserve Corporation*, 841 F.2d 159, 163 (7th Cir.1987). The extent of the findings by the Court depend on the nature of the stipulation, the parties to the same and the particular facts of the case.

██ In deciding whether to approve a settlement, the bankruptcy judge should consider the objections of the creditors; however, they are not controlling. *American Reserve*, 841 F.2d at 161. The court should emphasize the paramount interests of the creditors and give proper deference to their reasonable objections. *In re Hallet*, 33 B.R. 564, 566 (Bankr.D.Me.1983). The fact that a proposed settlement has not been objected to by the creditors or the United States Trustee does not necessarily mean that the compromise is in the best interest of the estate. *Greenacre*, 103 B.R. at 7.

*Id.* at 605 (Torruella, J., concurring).

■ The proponents of a compromise and settlement have the burden of persuading the court that the proposal is reasonable and in the best interest of the estate, and should therefore be approved. *Greenacre*, 103 B.R. at 5; *Hydronic*, 58 B.R. at 365; *GHR*, 50 B.R. at 931; *Hallet*, 33 B.R. at 565.

■ The debtors and Treasury allege that the compromise and settlement they propose is fair and equitable, and in the best interest of the estate and the creditors. Furthermore, they argue that settling Treasury's claims will permit debtors to devote their full attention to the final preparation and filing of their plans of reorganization and disclosure statements. The parties acknowledge that the stipulation agreement was entered into freely and voluntarily, without coercion, as a result of good faith negotiations between the parties and their attorneys.

■ The terms "fair and equitable" have been defined to mean that senior interests are entitled to full priority over junior interests. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.1984). In the settlement context, " 'fair and equitable' means that the settlement reasonably accords with the competing interests' relative priorities." *American Reserve*, 841 F.2d at 162.

Chrysler Credit, the creditor objecting to the proposed stipulation, does not oppose the substantive terms of the settlement. However, it argues that the payment of Treasury's claims should not be made until (1) the court determines the priority of the claims, in light of Chrysler Credit's prepetition liens and super-priority for postpetition financing; and (2) the plans of reorganization are confirmed. They allege that the Bankruptcy Code does not permit distributions to be made to pre-petition unsecured creditors or pre-petition priority creditors in a Chapter 11 proceeding except under and pursuant to a plan of reorganization that has been properly presented and approved.

The Small Business Administration and the U.S. Customs Service joined in Chrysler's objection to the stipulation at the hearing. They objected to the debtors' partial payment to Treasury by April 30, ahead of their claims of equal stature, and further objected to the stipulation for lack of adequate notice.

■ The proponents of the stipulation, debtors and Treasury, failed to meet their burden of persuading the court that the settlement should be approved. Specifically, they were unable to show why the secured and priority portion of Treasury's claim should be paid before the claims of creditors of equal priority and rank. Moreover, it was admitted that neither the stipulation nor the hearing was notified to the Small Business Administration and the U.S. Customs Service. Thus, the stipulation could not be approved as originally drafted and submitted by the parties. The stipulation was only acceptable to objecting creditors Chrysler, Small Business Administration and U.S. Customs if their proposed modification was made; that is, if the initial payment was made by consigning payment with the court rather than directly to Treasury. While debtors agreed to the proposal, the modification was not acceptable to Treasury.

The court found, and all parties agreed, that the stipulated amounts were fair and reasonable, and that it would be in the best interest of the estates and the creditors not to enter into protracted litigation as to the amounts owed by debtors to Treasury. Nevertheless, the Court declined to approve the stipulation because the stipulation and hearing date to consider it were not notified to the Small Business Administration and the U.S. Customs Service;[13] because the proponents could not indicate why should the Treasury be paid the secured and priority portion before April 30, 1992, that is, ahead of other creditors holding claims with the same rank and priority, and because approval of the stipulation, particularly the clause that payment must

---

**13.** Creditors holding the same secured rank and priority as Treasury does as to the amounts

which were to be paid on or before April 30, 1992.

be made before April 30, 1992, would endanger debtors' negotiations with Chrysler.

### Conclusion

In view of the foregoing, the stipulation between debtors and Treasury is not approved.

The Clerk shall enter judgment accordingly.

SO ORDERED.