Ruth DURRETT, et al.,
Plaintiffs, Appellants,

v.

HOUSING AUTHORITY OF the CITY
OF PROVIDENCE, et al.,
Defendants, Appellees.

No. 89–1608.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided Feb. 14, 1990.

John W. Dineen, Providence, R.I., for appellants.

Stephen J. Reid, Jr. and Blish & Cavanagh, Providence, R.I., on brief for the Housing Authority of the City of Providence, appellee.

Edward B. Foley, David W. Ogden, Jenner & Block, Washington, D.C., Barbara R. Arnwine, Paul Holtzman, Lawyers' Committee for Civ. Rights Under Law, John A. Powell, American Civ. Liberties Union Found., Herbert H. Henderson, Huntington, W.Va., Everald Thompson, NAACP Sp. Contribution Fund on brief for Lawyers' Committee for Civ. Rights Under Law,

American Civ. Liberties Union Found., Nat. Ass'n for the Advancement of Colored People, Nat. Council of La Raza, Civ. Liberties Union of Massachusetts, and Rhode Island Civ. Liberties Union, amicus curiae.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

COFFIN, Senior Circuit Judge.

This case began as a complex class action brought under 42 U.S.C. § 1983 and the Fair Housing Act of 1968, 42 U.S.C. § 3604(b), by tenants in two public housing projects against various municipal and national entities, seeking relief from a wide variety of allegedly substandard conditions. After much bitterness, including a lengthy rent strike, and much negotiation, the parties crafted a comprehensive settlement agreement that satisfied all concerned, specifically the plaintiff tenants and their landlord, the Providence Housing Authority. The district judge, however, refused to approve the agreement. The questions before us are whether we have appellate jurisdiction to review the denial of an order enforcing the settlement and, if so, whether the court below committed reversible error. We answer both questions in the affirmative.[1]

## Background

This controversy arose out of the complaints of tenants of the Hartford Park and Manton Heights housing developments concerning substandard conditions at the two developments, which offered public housing to largely minority occupants. Perhaps prophetically, it began in frustration with complaints lodged with the Providence Human Relations Commission (Commission) against the City of Providence (City) and the Providence Housing Authority (Authority), and also with efforts to process housing code enforcement requests under the City's administrative procedures. Neither effort resulted in any relief. In yet a third attempt, the named plaintiffs intervened in an action brought before the Housing Court Division of the state District Court by the City against the Authority, naming the United States Department of Housing and Urban Development (HUD) as a defendant. HUD removed the case to federal court, which remanded to the Housing Court. The latter court then advised plaintiffs to pursue their federal claims in federal court. The plaintiffs accordingly dismissed their claims without prejudice and commenced the instant action in July of 1986, almost two years after lodging the initial complaints. The complaint, after amendment, consisted of three counts. The first, aimed at the Commission and the City, essentially raised an equal protection claim that the discrimination complaints of plaintiffs did not receive the orderly processing given others. The second count, aimed at the City and the Authority, alleged failure to enforce housing code provisions, violating both substantive and procedural due process. It also claimed violation of the Fair Housing Act of 1968 by denying plaintiffs' rights to decent, safe, and sanitary housing. Count III, aimed at HUD, alleged that plaintiffs had been deprived of their rights to decent, safe, and sanitary housing, free from discrimination. The relief requested included injunctions (a) requiring the City to give full code enforcement protection to a class of all tenants of the two developments, (b) requiring the Authority to live up to city and state minimum standards, and (c) requiring HUD to conform to federal minimum standards and to establish and carry out a modernization and maintenance plan.

The ensuing period of almost two and one half-years was notable for a rent strike accompanied by an arrangement for receiving and holding rental payments in escrow. Considerable discovery and negotiation also took place. On November 17, 1988 a detailed Settlement Stipulation and Consent Decree agreement between plaintiffs and the Authority was presented to the court. It contained 50 numbered paragraphs in 29

---

**1.** We note that no party opposed this appeal and that no appellee's brief was filed. We nevertheless treated the issues seriously and endeavored to be thorough in our research. We note, in addition, that we found helpful the brief submitted by Amicus.

pages. The scope and tenor of the agreement can be appreciated from the catalogue of principal subjects covered, which we record in the margin.[2] As requested, the court deemed the proposed consent decree reasonable and called for a motion for approval and submission of a form of notice. Three months later, on March 22, 1989, the court granted its preliminary approval and ordered notice to issue.

At the noticed hearing on May 23, 1989, however, the court refused its approval, which would have given the agreement the status of a judgment. It gave two reasons. The first was that "the settlement stipulation is far more comprehensive than any relief that the Plaintiffs could secure if this matter was heard on the merits." Noting the range of matters indicated in our footnote 1, the court concluded that they were not involved in the litigation, because, in its view, this was only a § 1983 suit and "the only relief that I can see being granted ... is some sort of an order that these tenants ... be treated like any other tenants" by being allowed to pay rent into an escrow account while charges of housing violations would be heard by the Housing Court.

The court's second reason was its fear that it would become "a super-superintendent of these two housing projects," being called upon frequently to rule on petty, non-federal matters, such as inadequately functioning toilets. The court set the matter for trial but later, on July 18, 1989, recused itself. This appeal followed.

### Appealability

After having raised the issue of the appealability of a denial of a proposed consent decree, we are satisfied that we do have appellate jurisdiction. Although prior to 1981 there was a split of opinion among the circuits, *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), made it clear that an interlocutory order denying a motion to enter a consent decree providing injunctive relief may be appealable under 28 U.S.C. § 1292(a)(1) as an order refusing an injunction.

The threshold condition is that the proposed consent decree, either in its express terms or in its practical effect, "refuses" an injunction. *Id.* at 83, 101 S.Ct. at 996. That condition is clearly fulfilled in this case, for "prospective relief was at the very core of the disapproved settlement." *Id.* at 84, 101 S.Ct. at 996. There is, however, an additional critical precondition to interlocutory appealability: a showing of "serious, perhaps irreparable, consequence." *Id.* The Court found two such consequences in *Carson:* the lost opportunity to settle the case on the negotiated terms and the likelihood of irreparable injury from further delay. In the present case plaintiffs, and defendants also, are obviously in danger of suffering loss of "their right to compromise their dispute on mutually agreeable terms." *Id.* at 88, 101 S.Ct. at 998. Moreover, although the complaint does not in so many words allege the possibility of suffering irreparable injury from further delay, such a consequence seems implicit in the multiple allegations of substandard housing combined with the persistence of such conditions for the four-year period between the lodging of complaints with the Commission and the denial of approval of the consent decree.[3]

**2.** The agreement embraced the following undertakings by the Authority: eliminating all hazardous asbestos; landscaping around buildings; repairing or replacing all exterior lighting, roofs, and windows; replacing with new fixtures or equipment all refrigerators, stoves, cabinets, counters, sinks, showers, tubs, toilet fixtures, doors, and floor tiles; and installing modernized heating systems. Other provisions dealt with policies and procedures, such as those relating to a security deposit system, auto repairs on the premises, pets, management and maintenance staff, inspections, tenant screening and evictions, service programs, and the duty to meet and confer in good faith.

**3.** Although *Carson v. American Brands,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), is a Title VII case involving employment discrimination, and the case at bar is a Title VIII case involving discrimination in public housing, the principles announced are not confined to specific statutes. In identifying the conflict in the circuits on the issue, the Court cited cases involving the Investment Company Act of 1940, *Norman v. McKee,* 431 F.2d 769 (9th Cir.1970); Title VII, *United*

## Discussion of the Merits

We approach the merits—the question whether the district court committed reversible error in refusing to approve the proposed consent decree—with two general considerations in mind. The first is the applicable standard of review. The ordinary approach of appellate courts in reviewing the appropriateness of settlement approvals has been to refrain from intervening unless there is found to be an abuse of discretion by the trial court. *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1085 (2d Cir.1971). Apparently relying solely upon *Pfizer*, the Seventh Circuit, in *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir.1971), stated that the abuse of discretion standard applied "in reviewing the appropriateness of the settlement approval *or disapproval*." (Emphasis supplied.)

Subsequently, the Eighth Circuit, in *In re International House of Pancakes Franchise Litigation*, 487 F.2d 303, 304 (8th Cir.1973), relying on the above cited cases, applied the abuse of discretion standard in affirming a district court's refusal to approve a proposed settlement. In 1980 this case was identified by the Fifth Circuit as the only one in which a court of appeals had extended the abuse of discretion standard to apply to a review of a refusal to approve a settlement. *United States v. City of Alexandria*, 614 F.2d 1358, 1361 (5th Cir.1980). The *Alexandria* court refused to follow the Eighth Circuit and opted for a *de novo* review of a refusal to enforce a consent decree. *Id.* at 1362. Although the court's expressed concern was the possibility that district courts might otherwise have "unchallengeable unilateral power to slow [the] pace" of affirmative action in employment discrimination cases, *id.*, its *de novo* standard apparently was applicable generally to reviews of refusals

to enforce proposed consent decrees. Plaintiffs in the case at bar urge us to follow *Alexandria*.

*Alexandria*, however, in a case which escaped plaintiffs' notice, has subsequently been rather narrowly confined to exceptional circumstances by its own circuit. In *Williams v. City of New Orleans*, 729 F.2d 1554, 1558–59 (5th Cir.1984), the Fifth Circuit, *en banc*, in reviewing another refusal to implement a Title VII consent decree, distinguished the situation in *Alexandria*, where the proposed settlement had been reached early in the pretrial process and the trial court had no special knowledge of the evidence. In the situation before it in *Williams*, the consent decree had been arrived at only after "a thorough airing of the facts." *Id.* at 1559. The court held: "We here recognize that a district court does play a significant role in exercising discretion when it is fully cognizant of the facts and circumstances surrounding the case." *Id.* *Alexandria*, it further held, represented "an exception to the general rule of 'abuse of discretion' review." *Id.* at 1558. *See also Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir.1985).

 While a case might arise under such exceptional circumstances that we would feel compelled to conduct a *de novo* review of either an approval or disapproval of a proposed consent decree, this is not such a case. Almost three years elapsed between the filing of the original complaint and the court's denial of approval. The docket entries disclose substantial and frequent court involvement in ruling on motions to dismiss, holding hearings, and considering issues connected with the rent escrow account. Moreover, the court had been aware of the provisions of the proposed settlement for some six months. We therefore review only for abuse of discretion or error of law.

States v. City of Alexandria, 614 F.2d 1358 (5th Cir.1980); stockholder derivative actions, *Seigal v. Merrick*, 590 F.2d 35 (2d Cir.1978); and the Sherman Anti-Trust Act, *In re International House of Pancakes Franchise Litigation*, 487 F.2d 303 (8th Cir.1973). Moreover, the strong policy favoring the voluntary settlement of Title VII

claims, emphasized by the Court in *Carson*, 450 U.S. at 88, n. 14, 101 S.Ct. at 998, n. 14, finds its analogue in 42 U.S.C. § 3610(a), which encourages the Secretary, on receipt of fair housing complaints meriting resolution, to resort to "informal methods of conference, conciliation, and persuasion."

■ In so reviewing a refusal to enforce a voluntary settlement we must also recognize, as a second guideline, that the district court's discretion is restrained by "the clear policy in favor of encouraging settlements," especially in broad-based public housing disputes. *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980). Or, as the Seventh Circuit noted more recently:

The policy of encouraging settlements can easily be factored into an abuse of discretion analysis by noting that the district judge is to exercise his discretion in accordance with what Judge Friendly (and this court) has called a "principle of preference."

*Donovan v. Robbins,* 752 F.2d at 1177.

■ Subject to this principle, the district court must assure itself that the parties have validly consented; that reasonable notice has been given possible objectors; that the settlement is fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute, or other authority; that it is consistent with the objectives of Congress; and, if third parties will be affected, that it will not be unreasonable or legally impermissible as to them. *See United States v. City of Miami, Fla.,* 664 F.2d 435, 441 (5th Cir.1981).

■ In this case, none of the above factors is implicated. Adequate notice was given as ordered. No protesting third parties have appeared. There is no suggestion, or basis for one, that the proposed decree would violate any law or do other than further the objectives of Congress. Nor is the fairness, adequacy, or reasonableness of the agreement challenged as it will affect the parties. The most that we distill from the second ground relied on by the district court is that implementing the agreement might impose an unfair and unreasonable burden on the court. We shall examine this ground in due course.

As we have earlier noted, the district court's first basis for rejecting the settlement was that it would give plaintiffs far more comprehensive relief than they could have achieved with a victory after trial.

We first observe that the court's reading of the complaint is unwarrantedly fragmentary in visualizing the only relief that could be given as an order that plaintiffs be treated equally with other public housing tenants insofar as processing complaints and taking advantage of rent escrow accounts are concerned. We have, with this point in mind, described in some detail the range and type of injunctive relief requested under not only section 1983 but, more pertinently, the Fair Housing Act of 1968. Accordingly, given the facts that the dispute indisputably falls within the court's subject matter jurisdiction, that the proposed decree comes within the case made by the pleadings, and that it furthers the objectives of the law on which the complaint was based, we hold, as a ruling of law, that the first ground is untenable. As the Supreme Court stated in *Local Number 93, Int'l Ass'n of Firefighters v. Cleveland,* 478 U.S. 501, 526, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986):

[T]o the extent that the consent decree is not otherwise shown to be unlawful, the court is not barred from entering a consent decree merely because it might lack authority under [the governing statute] to do so after a trial.

■ The second ground relied on by the district court was its conclusion that its enforcement duties under the decree would involve it in ruling on weekly or monthly motions relating to many non-federal matters of a petty nature, such as tenant complaints about malfunctioning toilets or evictions. As for this ground, we are compelled to conclude that this is not a viable interpretation of the proposed decree. As we have attempted to demonstrate by the lengthy catalogue of relief provisions set forth in footnote 2, *supra,* the obligations assumed by the Authority are systemic—to upgrade, replace, or repair categories of land, buildings, fixtures, and equipment, as well as to institute studies, policies, and procedures. The only provision relating to evictions proscribes evicting any tenant for participating in the now concluded rent strike so long as the amounts owed had been deposited in the escrow account or

underpayments had been made current in accordance with the provisions of the settlement.

In other words, the relief provisions of the decree not only fit within "all measures necessary and appropriate to protect federal rights and implement federal policies" under the Fair Housing Act, *Metropolitan Housing Dev.*, 616 F.2d at 1011, but are contemplated within the statutory authority to order "such affirmative action as may be appropriate." 42 U.S.C. § 3613(c)(1). Indeed, this view of the relief sought was obviously shared by the Housing Court of Rhode Island when it advised plaintiffs to pursue their relief in federal court.

We would envisage at most minimal judicial involvement in helping facilitate the resolution of this longstanding controversy, which the parties themselves have so substantially advanced. We have every confidence in the ability of the district court to winnow out any attempted proceedings that belong in state court. There being no interest served in remanding this already overprotracted proceeding, we reverse the district court's refusal to enter the consent decree, and remand to the district court only to enter the decree and for any further proceedings which may be necessary and consistent with this opinion.

*Reversed and remanded.*

TORRUELLA, Circuit Judge (concurring).

I join the opinion of the court but wish to emphasize that district courts are duty bound to scrutinize even voluntary settlement proposals and should not give automatic approval to such matters, irrespective of the general policy in favor of encouraging settlements. Federal courts should not be enmeshed in overseeing continuing petty disputes, not only because such a course of conduct is an unpardonable waste of limited resources but more importantly because the trivialization of constitutional proceedings is deleterious to the well-being of the federal judicial system. Normally a district judge is in the best position to determine the practicalities of a settlement agreement and to predict its future course of conduct.

Although I agree that on the record before us refusal to approve the proposed settlement was an abuse of discretion by the district court which warrants the action taken by this Court, the district court should remain alert to any future attempt by the parties to the settlement to turn that body into a "super superintendent" of the housing project.