March 30, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2029

CONSERVATION LAW FOUNDATION OF
NEW ENGLAND, INC., ET AL.,

Plaintiffs, Appellees,

v.

BARBARA H. FRANKLIN, ETC., ET AL.,

Defendants, Appellees.

ASSOCIATED FISHERIES OF MAINE, ET AL.,

Intervenors, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Cyr, Circuit Judge.

Ralph J. Gillis, with whom Gillis & Campbell, was on brief

for appellants.
Peter A. Appel, Attorney, Department of Justice, with whom

Vicki A. O'Meara, Acting Assistant Attorney General, A. John

Pappalardo, United States Attorney, Suzanne E. Durrell, Assistant

United States Attorney, J. Carol Williams and Jean W. Williams,

Attorneys, Department of Justice, Margaret F. Hayes and Gene S.

Martin, Office of General Counsel, National Oceanic & Atmospheric

Administration, were on brief for Federal appellees.

Peter Shelley, with whom Maura J. Sheehan, was on brief for

appellees Conservation Law Foundation, Inc., and Massachusetts
Audubon Society.

March 30, 1993

TORRUELLA, Circuit Judge. In this appeal, several

fishing associations,1 appellants here, request that we vacate a

consent decree approved and entered by the district court between

the Conservation Law Foundation of New England, Inc. and

Massachusetts Audubon Society (collectively, "Conservation"), and

the Secretary of Commerce ("Secretary"). For the reasons that

follow, we reject this request.

PRIOR PROCEEDINGS

Conservation sued the Secretary alleging that the

Secretary failed to prevent overfishing off the coast of New

England, as required by the Fishery Management and Conservation

Act of 1976, as amended, 16 U.S.C. 1801-1882 (1985 & Supp.

1992) ("Magnuson Act"). Appellants sought to intervene. The

district court denied the request, but we granted it in

Conservation Law Foundation, Inc. v. Mosbacher, 966 F.2d 39 (1st

Cir. 1992). While the appeal seeking intervention was pending,

the district court entered a consent decree between Conservation

and the Secretary. Appellants now seek to vacate the consent

decree on various grounds. To fully understand the present

appeal, we must briefly describe the statutory context to this

suit.

STATUTORY BACKGROUND

Congress enacted the Magnuson Act to establish a

1 These associations include: Associated Fisheries of Maine,
N.E.; Atlantic Swordfish Net Ass'n, Inc.; Massachusetts Inshore
Draggermen's Ass'n, Inc.; and Point Judith Fishermen's
Cooperative Ass'n, Inc.

-3-

comprehensive system of fisheries management for waters within

the jurisdiction of the United States. 16 U.S.C. 1801(b)(1).

In particular, Congress found that certain stocks of fish had

been so overfished that their survival was threatened, id. at

1801(a)(2), and mandated that overfishing be prevented, id. at

1851(a)(1).

To attain these goals, the Act creates eight regional

fishery management councils. Id. at 1852(a). The regional

councils are comprised of state and federal government officials,

as well as individuals nominated by state executives and

appointed by the Secretary. Id. at 1852(b), (c). The Magnuson

Act charges the Secretary and the Councils with developing

fishery management plans ("FMPs") for stocks of fish within their

jurisdictions that require conservation and management. The Act

specifies the procedures by which FMPs are developed and creates

a number of standards to which the plans must conform. National

Standard One requires that "[c]onservation and management

measures shall prevent overfishing while achieving, on a

continuing basis, the optimum yield from each fishery for the

United States fishing industry." Id. at 1851(a)(1). The

Secretary has issued guidelines to assist the development of

plans by the regional councils. See 50 C.F.R. pt. 602.

The Act provides that either the councils or the

Secretary can develop FMPs. If a council generates a plan, the

Secretary must follow a detailed procedure for review, as

specified in 1854(a), (b). The Secretary first reviews the

-4-

plan for compliance with statutory mandates and publishes notice

of the plan in the Federal Register, soliciting comments from

interested persons. After review, the Secretary may approve,

partially approve, or disapprove the plan. If the Secretary

disapproves or partially disapproves of a plan she must inform

the council of her reasons. 16 U.S.C. 1854(b)(2). The council

may then submit a revised plan, id. at 1854(b)(3), which the

Secretary will review.

The Act authorizes the Secretary to develop an FMP with

respect to any fishery if (1) "the appropriate council fails to

develop and submit to the Secretary, after a reasonable period of

time, a fishery management plan for such fishery, or any

necessary amendment to such a plan, if such fishery requires

conservation and management . . . ," id. at 1854(c)(1)(A)

(emphasis added); or (2) "the Secretary disapproves or partially

disapproves any such plan or amendment, or disapproves a revised

plan or amendment, and the Council involved fails to submit a

revised or further revised plan or amendment, as the case may

be." Id. at 1854(c)(1)(B). Under either statutory authority,

the Secretary must submit the FMP to the appropriate council for

comments, and publish notice of the plan and regulations to

implement the plan in the Federal Register. Id. at

1854(c)(2)(A). Before the Secretary implements the plan, she

must consider the comments of the council and the public, and

ensure compliance with the national standards. Id. at

1854(c)(2)(B), 1851, 1853.

-5-

Approved FMPs are implemented by regulations

promulgated by the Secretary, which are subject to judicial

review in accordance with select provisions of the Administrative

Procedures Act, 5 U.S.C. 701 et seq. See 16 U.S.C. 1855(b).

HISTORY OF THE NORTHEAST MULTISPECIES FISHERIES PLAN

This case involves the conservation and management of

groundfish off the coast of New England.2 In its effort to

manage New England fisheries, the New England Fishery Management

Council ("New England Council") first eliminated foreign fishing

within its jurisdiction, 42 Fed. Reg. 13,998 (1977). In 1985, it

developed the Northeast Multispecies Fisheries Plan, Proposed

Rule, 50 Fed. Reg. 49,582 (1985), because overfishing remained a

problem. The Secretary approved the plan as an interim rule in

1986, indicating that the rule improved matters, but was

unsatisfactory for long term conservation and management.

Interim Rule, 51 Fed. Reg. 29,642, 29,643 (1986). In 1987, the

rule became final and three amendments followed. See Final Rule,

52 Fed. Reg. 35,093 (1987) (amendment one); Final Rule, 54 Fed.

Reg. 4,798 (1989) (amendment two); Final Rule, 54 Fed. Reg.

52,803 (1989) (amendment three).

The Rule and its amendments did not eliminate

overfishing as required by National Standard One. Pursuant to

the Secretary's guidelines on what constitutes overfishing, 50

C.F.R. 602.11 (1991), the Council determined that cod, haddock,

2 Groundfish tend to live near the ocean floor and include cod,
haddock, and flounder.

-6-

and yellowtail flounder in certain fisheries off the coast of New

England were overfished and drafted amendment four to redress

that problem. The Secretary partially approved amendment four,

56 Fed. Reg. 24,724 (1991), but found the amendment deficient,

stating that it did "not constitute a complete rebuilding

strategy . . . ." Id. at 24,725.

In response to amendment four, Conservation sued the

Secretary, complaining that she had arbitrarily and capriciously

approved the amendment and that the overall FMP failed to comply

with National Standard One. Thereafter, Conservation and the

Secretary began negotiations to enter a consent decree settling

the suit. Appellants sought to intervene but the district court

denied the request. While the appeal was pending, the district

court entered a consent decree on August 28, 1991. In the

appeal, we granted appellants intervenor status.

THE CONSENT DECREE

The consent decree established a timetable for a FMP or

an amendment to the plan applicable to New England waters that

would "eliminate the overfished condition of cod and yellowtail

flounder stocks in five years after implementation and . . .

eliminate the overfished condition of haddock stocks in ten years

after implementation." Conservation Law Foundation, Inc. v.

Mosbacher, C.A. No. 91-11759-MA, slip op. at 2 (D. Mass.,

August 28, 1991) (consent decree). The decree expressly stated

that it "shall meet all requirements established by applicable

statutes and regulations . . . ." Id. at 2. It directed that

-7-

the New England Council would have the first opportunity to

develop the groundfish rebuilding plan, but also established a

timetable for the Secretary to create and implement her own plan

if the council failed to act. Appellants unsuccessfully moved to

vacate the consent decree. This appeal followed.

DISCUSSION

District courts must review a consent decree to ensure

that it is "fair, adequate, and reasonable; that the proposed

decree will not violate the Constitution, a statute or other

authority; [and] that it is consistent with the objectives of

Congress . . . ." Durrett v. Housing Authority of Providence,

896 F.2d 600, 604 (1st Cir. 1990). Where an administrative

agency has committed itself to a consent decree, the district

court must exercise some deference to the agency's determination

that settlement is appropriate, F.T.C. v. Standard Financial

Management Corp., 830 F.2d 404, 408 (1st Cir. 1987), and "refrain

from second-guessing the Executive Branch." United States v.

Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990).

Moreover, "the court is not barred from entering a consent decree

merely because it might lack authority under [the governing

statute] to do so after a trial." Local No. 93, Int'l Ass'n of

Firefighters v. Cleveland, 478 U.S. 501, 525-26 (1986).

The Supreme Court has stated that district courts may

properly approve a consent decree where (1) it "spring[s] from

and serve[s] to resolve a dispute within the courts' subject-

matter jurisdiction"; (2) it "come[s] within the general scope of

-8-

the case made by the pleadings"; and (3) furthers the objectives

upon which the complaint was based. Id. Therefore, the parties

enjoy wide latitude in terms of what they may agree to by consent

decree and have sanctioned by a court. Furthermore, we recognize

a strong and "clear policy in favor of encouraging settlements,"

especially in complicated regulatory settings. Durrett, 896 F.2d

at 604 (citation omitted); Cannon Engineering, 899 F.2d at 84.

We review the district court's denial of a motion to

vacate a consent decree for abuse of discretion. Cannon

Engineering, 899 F.2d at 84. Additionally, "[t]he doubly

required deference - district court to agency and appellate court

to district court - places a heavy burden on those who propose to

upset the trial judge's approval of a consent decree." Id. We

turn now to appellants' challenge to the decree.

Appellants contend that the consent decree constitutes

improper rulemaking under the statute which deprives the public

of an opportunity to comment. They assert that the consent

decree (1) creates a new standard requiring that the FMP

"eliminate" overfishing, whereas National Standard One mandates

"prevention" of overfishing while maintaining maximum sustainable

yield from fisheries; (2) requires a rebuilding program and a

timetable for compliance not present in the Magnuson Act; (3)

establishes a "good faith" performance standard for Council

action; and (4) constrains the Secretary's discretion under the

Act.

Appellants essentially maintain that the Secretary's

-9-

action with respect to Council-generated FMPs, or amendments

thereto, must follow the statutorily prescribed course of review,

as set forth in 16 U.S.C. 1854(b), which requires that the

Secretary notify the council of its reasons for disapproving any

portion of the plan and provide an opportunity for the council to

revise the plan. Appellants also argue that the consent decree

essentially is improper under 1854(c), which authorizes the

Secretary to generate her own plans under certain circumstances.

Appellants maintain that the Secretary may not act unless the

Council has failed to issue a plan after a reasonable period, or

the Secretary disapproves of some aspect of a plan and the

Council fails to revise it. Because neither 1854(c) condition

has occurred, appellants contend that the consent decree

constitutes unlawful rulemaking. They allege that the Secretary

is not free to by-pass the dictates of 1854 through a consent

decree, but rather must wait for a revised amendment before

developing her own plan.

Appellants' challenge fails for three reasons. First,

in instances in which the rights of third parties are the basis

for blocking the entry of, or vacating, a consent decree, there

must be a demonstrable injury or adverse effect upon the group

not party to the decree. See Durrett, 896 F.2d at 604. This

threshold showing is analogous to the standing requirement. A

right to intervene does not necessarily suffice to meet the test

for vacating a consent decree. In this case, appellants have

failed to allege any specific injury to themselves, or any other

-10-

party. The district court denied appellants' motion to vacate

without prejudice to renewal for precisely this reason.

Furthermore, appellants' suggestion that they have been excluded

from the development of the plan is simply untrue. Appellants

will have ample opportunity to comment on the plan contemplated

by the consent decree through their influence in the New England

Council,3 and through the notice and comment process required

before final rules and regulations are promulgated by the

Secretary.

Second, the statutory argument based on 1854(c)(1)(B)

is without merit. Section 1854(c)(1)(B) grants the Secretary

authority to generate her own plan, after disapproving or

partially disapproving a council-generated plan, only after the

council fails to submit a revision. Appellants read

1854(c)(1)(B) as circumscribing the Secretary's authority in this

case, because Conservation sued alleging the illegality of

amendment four. According to appellants, the consent decree

represents an improper exercise by the Secretary because the

Council has not been given a chance to revise amendment four.

Thus, until the New England Council fails to propose revisions,

the Secretary may not act. If we were to follow appellants'

suggestion, the Secretary would not be able to exercise her

statutory discretion to develop her own plan once the Council

submits a plan. The practical effect would permit the Council to

3 Apparently some members of the intervenor associations are on
the Council.

-11-

determine the timetable for developing and enforcing FMPs.

The language of the statute, however, does not support

appellants' interpretation. The statute authorizes the Secretary

to develop her own plan if the council fails to submit a plan, or

amendment thereto, "within a reasonable time." 16 U.S.C.

1854(c)(1)(A). Section 1854(c)(1)(B) provides that the

Secretary may act if "[he] disapproves or partially disapproves

any such plan or amendment, or disapproves a revised plan or

amendment, and the Council involved fails to submit a revised or

further revised plan or amendment, as the case may be." Id. at

1854(c)(1)(B). Thus, while the provision does not expressly

include the phrase "after a reasonable time," as in

1854(c)(1)(A), such a condition is implicit. Without it, the

statute fails to indicate who decides when a Council has failed

to act or how much time must pass before that decision maker can

conclude that the council has failed to act. Since these two

subsections are part of the same statutory grant of authority,

and a contrary reading would create an incomprehensible gap in

the statute and hold the Secretary hostage to the Councils, we

hold that the Secretary may generate her own revisions to

Council-generated plans, if the council fails to revise after a

reasonable time.

Our reading gives proper deference to the Secretary,

who, under the Magnuson Act, is ultimately charged with

preventing overfishing as mandated by National Standard One. The

councils serve the Secretary by presenting FMPs. The Magnuson

-12-

Act also unequivocally vests the Secretary with the discretion to

determine whether a Council's progress on conservation and

management is reasonable.

Furthermore, contrary to appellants' assertions,

section 1854(c)(1)(B) simply is not implicated in this case. The

purpose of the consent decree was to avoid a legal determination

whether amendment four complied with National Standard One, or

whether the Secretary had discharged her statutory duty under the

Magnuson Act. The decree sought to save limited agency resources

that would have been wasted on discovery, compiling an

administrative record, and protracted litigation. The decree

purposefully did not admit wrong-doing on the part of the

Secretary or the improper approval of amendment four. It merely

mandates the creation of a new amendment, rather than the

revision of an old one - amendment four. As the provisions in

1854(c)(1)(B) related to revisions do not apply here, that

section cannot be used as a shield to prevent the Secretary from

exercising her statutory discretion.

The third, and final, reason the appeal fails relates

to the permissible scope of consent decrees. Appellants argue

that because the suit challenged amendment four, the consent

decree cannot resolve matters beyond the terms of the amendment.

They misstate the factual scope of Conservation's complaint.

While it is true that Conservation's original complaint attacked

the Secretary's approval of amendment four, it also sought

broader relief - more vigorous conservation and management of New

-13-

England fisheries. In any event, the law governing consent

decrees clearly holds that parties are not restricted to the

terms of the complaint, and may enter a consent decree on other

matters, provided they have the legal authority to do so. Local

No. 93, 478 U.S. at 525-26.

In the present case, the Secretary simply has exercised

her discretion to set a timetable for the development of a FMP

for New England fisheries. Specifically, the Secretary has

stated in advance that she will exercise her authority to create

a plan pursuant to 1854(c)(1)(A), unless the Council develops a

FMP within the "reasonable time" set by the consent decree.

Indeed, it specifically provides that the New England Council

attempt to create a FMP before the Secretary acts.

The Secretary could have established the same schedule

without explicitly notifying the New England Council, or without

entering a consent decree, since what constitutes a "reasonable

time" under the statute is solely within the Secretary's

discretion. Instead, the Secretary chose to settle

Conservation's law suit with a fair, adequate, and reasonable

consent decree that agrees to flexible dates for the development

of a much needed FMP for New England.4 See Durrett, 896 F.2d at

604.

In addition, the district court properly entered the

4 The parties to the consent decree already have indicated that
the specific dates in the decree will be changed because the
Council has failed to meet the deadline and both agree more time
is necessary.

-14-

consent decree under the other factors of Local No. 93. First,

the decree resolved a dispute within the subject matter

jurisdiction of the court since the suit challenged the

Secretary's approval of amendment four, which was reviewable

pursuant to 1855(b). Second, the parties agreed to develop a

fishery rebuilding program to prevent overfishing which remedy is

within the general scope of the pleadings. Indeed, this is

exactly the relief requested. Third, it satisfies the objectives

of the complaint. Local No. 93, 478 U.S. at 525-26.

We find no merit to appellants' other arguments.

Appellants rely heavily on the fact that the consent decree

commits the Secretary to develop a plan to "eliminate"

overfishing, rather than "prevent" overfishing as stated in the

Magnuson Act, 16 U.S.C. 1851(a). This change, they assert,

amounts to rulemaking establishing a new standard. On the

contrary, the decree uses the word "eliminate" because the New

England Council already has determined that overfishing of cod,

haddock, and yellowtail flounder presently occurs. One cannot

prevent what has already occurred. Thus, the consent decree

establishes that a plan to rebuild will be developed in order to

"eliminate" present overfishing, and "prevent" future

overfishing.

Similarly, we are unmoved by appellants' contention

that the consent decree imposes a new "good faith" requirement

with respect to Council action, which is not present in the

Magnuson Act. The "good faith" language of the consent decree is

-15-

superfluous and does not change the relationship between the New

England Council and the Secretary in any respect. As the consent

decree states, the Secretary maintains sole discretion to

determine whether the Council's failure to act requires that she

begin developing her own conservation program. Substantively,

the provisions of the consent decree mirror those of 1854.

"The fact that certain provisions in the Decree track the

language of the Act more closely than others is irrelevant, so

long as all are consistent with it." Citizens for a Better

Environment v. Gorsuch, 718 F.2d 1117, 1125 (D.C. Cir. 1983)

(holding consent decree that established similar timetable

judicially enforceable).

With respect to the five and ten year rebuilding goals,

the Secretary has discretion to establish such target periods.

Section 1853(b)(10) provides that the Secretary may include "such

other measures, requirements, or conditions and restrictions as

are determined to be necessary and appropriate for the

conservation and management of the fishery." The Secretary,

thus, has broad discretion concerning the contents of a FMP. Of

course, the rebuilding targets in the consent decree are not

rules, but rather periods that may be incorporated into a final

rebuilding program contemplated by the consent decree.

The decree expressly provides that the provisions for

notice and comment by the New England Council and the public will

be followed. Once the Secretary approves a plan, she will

promulgate regulations to enforce the plan. The consent decree,

-16-

therefore, does not violate the notice and comment requirements

of the statute because it creates no rule for which notice and

comment is required. Appellants will have an opportunity to

voice their opinions on the plan.

Appellants' last argument contends that the district

court could not enter the decree because it lacked jurisdiction

under 16 U.S.C. 1855(b) of the Magnuson Act, which provides for

judicial review only of regulations and certain secretarial

actions. The claim is without merit. The benchmark for

determining whether the court properly exercised jurisdiction is

the original complaint filed by Conservation. The complaint

challenged amendment four, among other things. Because the

district court had jurisdiction under 1855(b) to review

amendment four, the district court could enter the consent decree

because it resolved the dispute within the standards established

by Local No. 93, 478 U.S. at 525-26.

The district court's denial of the motion to vacate the

consent decree is affirmed.

-17-